**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM R. MILLER, | ) | CASE NO. 4:13-cv-1365 |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| CHRISTOPHER LAROSE, Warden | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

Petitioner William R. Miller ("Miller "), challenges the constitutionality of his conviction in the case of *State v. Miller*, Trumbull County Court of Common Pleas Case No. 2009-CR-148. Miller, *pro se*, filed a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on June 20, 2013. On December 11, 2013, Miller filed an Amended Petition. (ECF No. 11.) On December 18, 2013, Warden Christopher LaRose ("Respondent") filed a Motion to Dismiss the Amended Habeas Petition as time-barred.[1] (ECF No. 12.) Miller filed a brief in opposition on January 10, 2014, to which Respondent filed a reply. (ECF Nos. 16 & 17.) Finally, Miller was permitted to file a surreply. (ECF Nos. 19 & 22.) For reasons set forth in detail below, it is recommended that Miller's petition be DISMISSED as time barred.

[1] Respondent's previously filed motion to dismiss the original petition as time-barred was denied as moot. (ECF Nos. 7, 15.)

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Miller's conviction as follows:

> [*P2] The instant appeal stems from an incident on February 7, 2009. LB. and her friend, Jolene Beach, were patrons at Blue Magoo bar in downtown Warren, Ohio. Beach and L.B. met appellant at the bar, and the three individuals drank and engaged in conversation. Toward the end of the night, L.B. offered appellant a ride home to Niles, Ohio, since she was traveling in the same direction. Appellant agreed and he directed L.B. as they were driving. During the drive, appellant suggested that he and L.B. check into a hotel. Ignoring his requests, L.B. continued to drive. Appellant directed L.B. beyond the city limits of Niles to Weathersfield Township. Appellant instructed L.B. to drive to Old Salt Springs Road, an unlit, secluded road that is approximately one mile long. Here, appellant took out a knife and instructed L.B. to remove her shirt and bra. L.B. complied. Appellant unzipped his pants and shoved L.B.'s head into his lap, forcing her to perform oral sex on him for approximately five to ten minutes.
>
> [*P3] L.B. testified that she was crying, and, sensing a way to escape, she informed appellant that she would go to a hotel with him. L.B. stated that appellant agreed and said, "let's get out of here." L.B. got dressed and attempted to drive away; however, her car became stuck in the snow. A passing motorist, Nathan McCracken, noticed L.B.'s car and stopped to see if she needed assistance.
>
> [*P4] McCracken indicated that as he approached the vehicle, both L.B. and appellant were standing outside the vehicle. McCracken testified that L.B. came around the back of his vehicle, squeezed his hand, and whispered, "get me out of here."
>
> [*P5] L.B. stated that she remained seated in the vehicle and mouthed the words, "please help me." Nevertheless, both L.B. and McCracken maintained that when the vehicle became unstuck, L.B. drove off, leaving appellant behind. McCracken offered appellant a ride home. McCracken dropped appellant off at the intersection of Ohltown and Niles Carver Road in Weathersfield Township.
>
> [*P6] Upon fleeing the scene, L.B. called 9-1-1. Before driving to the Niles Police Department, L.B. testified that she stopped at a gas station to purchase a

> soda and cigarettes. At the police station, the police determined that the rape occurred in Weathersfield Township. Therefore, the Weathersfield Police Department was contacted and Patrolman Todd Garlow was sent to the Niles station to take a report. Patrolman Garlow observed L.B., who was upset and crying. Together, they drove to the location of the incident; however, Patrolman Garlow was unable to recover any evidence. While L.B. allowed the police to search her vehicle, she did not allow them to impound it, as she had just started a new job and needed the car for transportation. L.B. also testified that if her vehicle was impounded, she would have to inform her elderly father of the incident. A search of the vehicle revealed a cigarette butt behind the passenger's seat. At trial, Brenda Gerardi, a forensic scientist, testified that the DNA on the cigarette butt matched appellant's profile by a ratio of 3.8 quintillion to one.

*State v. Miller*, 2010-Ohio-5795, 2010 Ohio App. LEXIS 4878 (Ohio Ct. App., Nov. 24, 2010) (footnotes omitted).

## II. Procedural History

### A. Conviction

On February 27, 2009, a Trumbull County Grand Jury charged Miller with one count of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02 and one count of kidnapping in violation of O.R.C. § 2907.01. (ECF No. 7-1.) Both counts carried repeat violent offender specifications. *Id*.

On December 17, 2009, a jury found Miller guilty as charged. (ECF No. 7-1, Exhs. 14-16.) On January 7, 2010, Miller was sentenced to an aggregate term of thirty years imprisonment. (ECF No. 7-1, Exh. 17.)

### B. Direct Appeal

On January 19, 2010, Miller, through counsel, filed a Notice of Appeal with the Court of Appeals for the Eleventh Appellate District ("state appellate court") raising the following assignments of error:

1. The trial court erred by denying appellant's Crim. R. 29 motion for acquittal


as to kidnapping and the repeat violent offender specifications, and by failing to merge those specifications for purposes of sentencing.

2. The trial court abused its discretion by denying appellant's motion for a mistrial.

3. The trial court erred by denying the appellant's motion to dismiss when the record reveals that more than ninety days had passed between the appellant's initial incarceration and the day that the trial began.

4. The trial court abused its discretion by sentencing appellant to maximum and consecutive terms of incarceration, where the record reveals that such terms are unreasonable.

5. The appellant's conviction is against the manifest weight of the evidence.

(ECF No. 7-1, Exh. 24.)

On November 24, 2010, Miller's conviction was affirmed.[2] (ECF No. 7-1, Exhs. 26 & 27.)

On January 13, 2011, Miller, through counsel, filed a Notice of Appeal (ECF No. 7-1, Exh. 28) with the Supreme Court of Ohio raising the following propositions of law:

I. A trial court commits reversible error by denying a criminal defendant's motion for acquittal of kidnapping and repeat violent offender specifications, and failing to merge the sentences for kidnapping and rape convictions, where the record reveals that such convictions are allied offenses of similar import.

II. A trial court abuses its discretion by failing to grant a mistrial based upon the prosecution's eliciting of a criminal defendant's prior bad acts, where the record reveals that such evidence was admitted to prove the character of the defendant in order to show he acted in conformity therewith, to the prejudice

[2] On February 15, 2012, Miller, *pro se*, filed a motion for reconsideration pursuant to Ohio App. R. 26(A) asking the court to reconsider its denial of his speedy trial claim. (ECF No. 7-1, Exh. 32.) The motion was denied as untimely. (ECF No. 7-1, Exh. 34.) Furthermore, the court found that Miller failed to articulate any reason why his application was approximately fourteen (14) months late. *Id*. No appeal was filed from this decision.

      of the defendant.

  III.  A trial court commits reversible error by denying the motion to dismiss of a defendant charged with a felony who has been incarcerated for more than ninety days, has not been charged with any other crimes in the interval between his detention and the date of trial, and who has in no way delayed the date of the trial himself.

  IV.  A trial court abuses its discretion by sentencing a criminal defendant to serve maximum and consecutive sentences where the record reveals that such a sentence is not reasonable in light of the factors set forth in R.C. 2929.12 for achieving the goals of sentencing as set forth in R.C. 2929.11.

  V.  A criminal defendant's convictions for rape and kidnapping, and attendant specifications, are against the manifest weight of the evidence, where the record reveals that the jury clearly lost its way in relying upon unproven, unreliable, uncertain, conflicting, and contradictory evidence.

(ECF No. 7-1, Exh. 29.)

On April 6, 2011, the appeal was dismissed as not involving any substantial constitutional question.  (ECF No. 7-1, Exh. 31.)

**C.  Applications to Reopen Appeal**

On February 29, 2012, Miller, *pro se*, filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B).  (ECF No. 7-1, Exh. 35.)  Miller argued that appellate counsel was ineffective for failing to raise the following assignments of error:

  1.  The trial court proceeds without jurisdiction where no element of an offense occurs in Ohio.

  2.  The speedy trial clause of the Sixth Amendment to the United States Constitution stand as a jurisdictional bar to conviction.

  3.  The defense counsel was ineffective and acted contrary to the Sixth Amendment to the United States Constitution.

  4.  The evidence is insufficient to sustain a verdict of guilty beyond a reasonable doubt guaranteed in the Fourteenth Amendment to the United States Constitution.

(ECF No. 7-1, Exh. 35.)

On March 27, 2012, the application was denied as untimely and the court further found that Miller failed to demonstrate good cause for his tardiness. (ECF No. 7-1, Exh. 36.)

No appeal was filed with the Supreme Court of Ohio. However, on May 11, 2012, Miller, *pro se*, filed a second application to reopen his direct appeal pursuant to Ohio App. R. 26(B) arguing that appellate counsel had failed to advise him of his right to file an application to reopen his appeal. (ECF No. 7-1, Exh. 37.) He raised the following assignments of error:

1. The trial court proceeds without jurisdiction where no element of an offense occurs in Ohio.

2. Miller was denied his statutory speedy trial rights pursuant to Ohio Revised Code § 2945.71 *et seq*.

3. The evidence adduced at trial was insufficient to sustain a verdict of guilty beyond a reasonable doubt that Miller committed the crimes of rape and kidnapping.

(ECF No. 7-1, Exh. 37.)

On June 14, 2012, the court again denied the application. (ECF No. 7-2, Exh. 40.) The court referenced its prior decision that Miller's application was untimely. *Id*. Furthermore, it found that the three assignments of error raised by Miller were unrelated to a claim of ineffective assistance of appellate counsel. *Id*. As to Miller's statutory speedy trial claim, the court noted that it had previously addressed and denied that claim. *Id*.

On July 23, 2012, Miller filed a Notice of Appeal with the Supreme Court of Ohio. (ECF No. 7-2, Exh. 42.) On October 10, 2012, the appeal was dismissed as not involving any substantial constitutional question. (ECF No. 7-2, Exh. 44.)

**D. Postconviction Petitions**

Meanwhile, on September 8, 2011, Miller, *pro se*, filed a motion to vacate or set aside his conviction or sentence pursuant to O.R.C. § 2953.21 raising the following arguments:

> 1. Trial counsel was ineffective as a result of his failure to fully advise Mr. Miller of his involvement with the Ohio Supreme Court Disciplinary Counsel.
>
> 2. Trial court was ineffective as a result of his failure to fully investigate the case and the witnesses.
>
> 3. Trial counsel was deficient in failing to subpoena pertinent records, video tapes, statements and other information relevant to the case.
>
> 4. Trial counsel failed to adequately investigate the State's witnesses prior to trial.
>
> 5. The State of Ohio failed to introduce sufficient evidence to sustain a conviction for Rape charged in the state's indictment.

(ECF No. 7-2, Exh. 45.)

On October 20, 2011, the trial court found that Miller's petition was untimely and the court, therefore, was without jurisdiction. (ECF No. 7-2, Exh. 48.)

On January 30, 2012, Miller filed a Notice of Appeal with the state appellate court raising the following assignments of error:

> 1. Defendant-Appellant William R. Miller's right to effective assistance of counsel guaranteed under Article I, Sections 10 and 16 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution was violated by trial counsel's failure to make the adversarial process work during pretrial and trial stages of his case.
>
> 2. The trial court abused its discretion when it dismissed Miller's motion to set aside or vacate judgment of conviction or sentence without conducting an evidentiary hearing.

(ECF No. 7-2, Exh. 50.)

On October 22, 2012, the trial court's determination that the petition was untimely was affirmed. (ECF No. 7-2, Exh. 52.)

On November 5, 2012, Miller, *pro se*, filed an appeal with the Supreme Court of Ohio. (ECF No. 7-2, Exh. 54.) On February 20, 2013, jurisdiction was declined pursuant to Practice Rule 7.08(B)(4).[3] (ECF No. 7-2, Exh. 76.)

**E. Federal Habeas Petition**

On June 20, 2013, Miller filed a Petition for Writ of Habeas Corpus, which was replaced by his Amended Petition filed on December 9, 2013. (ECF Nos. 1 & 11.) The latter raises the following grounds for relief:

> GROUND ONE: Petitioner has been prejudicially deprived of his actual innocence and Sixth Amendment right to assistance of counsel to effectively assistance [sic] him in the adversarial process during pretrial and trial stages of the case.
>
> GROUND TWO: The trial court erred by denying the Petitioner's motion to dismiss when the record clearly reveals that more than ninety days had passed between the Petitioner's initial incarceration and the day that trial began, and had not been charged with any other crimes in the interval between his detention and the date of trial, and who has in no way delayed the date of the trial himself. The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the speedy trial by the state.
>
> GROUND THREE: The Petitioner has been prejudicially deprived of his actual innocence and Fourteenth Amendment due process rights with his conviction on insufficient evidence to prove every element of the crimes of kidnapping and rape beyond a reasonable doubt.
>
> GROUND FOUR: Trial court proceeds without jurisdiction where no element of an offense occurs in Ohio in violation of the 4th, 5th, 9th Amendments to the United

[3] Miller filed numerous other motions in Ohio courts. Sequentially, the next was a state petition for a writ of habeas corpus filed on December 12, 2012. As explained below, the statute of limitations had already expired on July 5, 2012 and any subsequent filings had no tolling effect.

> States Constitution and Article I Section 10, 14 & 16 of the Constitution of the State of Ohio.

(ECF No. 11.)

## II. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

**A. One-Year Limitation**

In the instant action, Respondent contends that Miller's conviction became final on July 5, 2011, ninety days after the Supreme Court of Ohio denied his appeal, as Miller did not file a petition for a writ of certiorari with the United States Supreme Court. (ECF No. 12 at 18.) The Court agrees. The statute of limitations began running the following day on July 6, 2011. Absent any statutory tolling, Miller was required to file his habeas petition by July 5, 2012. Miller did not file his petition until June 20, 2013 – a few weeks shy of being one year late.

Petitions filed more than one year after the conclusion of direct review are not always untimely. The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). While Miller filed numerous motions, applications, and petitions with the Ohio courts, none of those filings served to toll the statute of limitations. It is well established that only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 3 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905, *2, Case No. 2:08cv1168 (S.D. Ohio Jan. 8, 2009).

Miller's post-conviction petition, filed on September 8, 2011, was denied as untimely. (ECF No. 7-2, Exhs. 45 & 48.) Miller's motion for reconsideration, filed on February 15, 2012, was

likewise denied as untimely. (ECF No. 7-1, Exhs. 32 & 34.) His application to reopen his appeal, filed a few days later on February 12, 2012, was also denied as untimely. (ECF No. 7-1, Exhs. 35 & 36.) Miller filed a second application to reopen his appeal on May 11, 2012. (ECF No. 7-1, Exh. 37.) That application was also denied, and the court expressly referenced its prior denial on untimeliness grounds. (ECF No. 7-2, Ex. 40.) In addition, the court refused to reopen the appeal as none of Miller's proposed assignments of error involved allegations of ineffective assistance of appellate counsel. *Id.* The state appellate court's brief discussion of whether the issues presented by Miller were even cognizable claims under Ohio Rule 26(B) does not render that application timely or properly filed. In the slightly different context of procedural default, a state's enforcement of a procedural rule is not rendered null by the consideration of the merits.[4] *Cf. Conley v. Warden Chillicothe Corr. Inst.*, 505 Fed. Appx. 501, 506 (6th Cir. 2012) (finding an Ohio court's "alternative ruling on the merits did not remove the procedural default because 'a state court need not fear reaching the merits of a federal claim in an alternative holding.'") (citations omitted).

However, the question remains whether Miller enjoyed the benefit of statutory tolling while he appealed the state courts' determinations that his various state court filings were untimely. As in the past, Respondent fails to address the issue of whether a potentially timely appeal from an untimely post-conviction or collateral petition has a tolling effect where the statute of limitations has not yet expired.[5] *See, e.g., Parsons v. Turner*, 2013 U.S. Dist. LEXIS 183368 at *10 (N.D.

---

[4] The Court does not construe the state appellate court as reaching the merits of Miller's claims as it expressly refused to reopen the appeal.

[5] In this case, the question is dispositive on the time-bar issue. If Miller enjoys the benefit of statutory tolling while his appeals remained pending, his petition is not barred

Ohio, Nov. 19, 2013). In *Parsons*, this Court observed as follows:

> This Court's own review of this issue has not unearthed any controlling case law directly on point. [FOOTNOTE 5] However, in *Pace*, the Supreme Court expressed reservations about the wisdom of tolling where a petition is untimely. 544 U.S. at 413 ("On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.") Similar concerns are applicable here. A petitioner should not enjoy the benefit of statutory tolling by promptly appealing from an otherwise improperly filed collateral petition. The *Pace* court, while not confronted with identical circumstances, held as follows: "[w]hat we intimated in *Saffold* we now hold: When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." 544 U.S. at 414 (citing *Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002)).
>
> > [FOOTNOTE 5] In *Lynch v. Wilson*, 2009 U.S. Dist. LEXIS 6702 at **4-5 (N.D. Ohio Jan. 30, 2009) (Oliver, J.), the court addressed whether appeals from a petitioner's improperly filed post-conviction, collateral actions tolled the statute of limitations. The *Lynch* court rejected the report and recommendation of the Magistrate Judge and found that the subsequent appeals from improperly filed postconviction actions failed to toll the statute of limitations under the AEDPA.
>
> This Court agrees with the *Lynch* decision and finds that the concerns of undue delay expressed by the Supreme Court preclude statutory tolling during the pendency of an appeal from an untimely post-conviction or collateral application. This Court recognizes that the outcome might be different if the appeal leads to a reversal of the lower court's decision and results in a finding that the application was "properly filed" under state law. Here, however, the Ohio Supreme Court dismissed the appeal. (ECF No. 9-1, Exh. 20.) "Where the last reasoned order in a state court proceeding relies on a procedural error, later unexplained orders are presumed to rest on the same ground." *Palmer v. Lavigne*, 43 Fed. Appx. 827, 829 (6th Cir. 2002) (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

*Id*. at 11-13, *report and recommendation adopted by* 2014 U.S. Dist. LEXIS 4426 (N.D. Ohio Jan.

---

by the statute of limitations. On the other hand, if an appeal from the denial of an untimely, and thus improperly filed, application to reopen has no tolling effect, his habeas petition would be time-barred.

14, 2014) (Helmick, J.) (finding an appeal could not be taken in good faith).

As in *Parsons*, Miller's appeals taken from his untimely state court filings did not toll the statute of limitations. Each appellate decision affirmed the lower court and, therefore, this Court may presume that those decisions affirmed the finding that Miller's post-conviction and collateral findings were all untimely.

In addition, state post-conviction filings, even if timely, cannot serve to toll a statute of limitations which has already expired. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted). Therefore, all of Miller's state court filings that post-dated July 5, 2012 – the date the statute of limitations expired – had no tolling effect.

Without the benefit of statutory tolling, Miller's habeas petition had to be filed no later than July 5, 2012. Therefore, unless equitable tolling is appropriate or Miller is entitled to begin calculating the statute of limitations from an alternative date, his petition should be dismissed as time-barred.

**B. Factual Predicate**

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims presented" was not discovered by a petitioner, acting with due diligence, until a later date. The Court does not construe Miller's responsive briefs (ECF Nos. 16 & 19) as arguing that the factual predicate of his claims were not discoverable until sometime after July 6, 2011 – the date the

statute of limitations began running.

Miller essentially raises four grounds for relief: (1) ineffective assistance of trial counsel; (2) a violation of his right to a speedy trial; (3) his conviction was not supported by sufficient evidence; and, (4) the actions giving rise of the his convictions occurred outside of the state of Ohio. (ECF No. 11.) The factual predicate of all these claims were either known or discoverable by Miller no later than the conclusion of his trial. As such, an alternate start date is not a viable argument.

**C. Equitable Tolling**

Finally, the Court finds that equitable tolling is not appropriate. Miller mentions the availability of equitable tolling in his traverse and surreply (ECF Nos. 16 & 19) after Respondent raised the statute of limitations defense. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (holding that a petitioner bears the burden of proving that equitable tolling is applicable). In order to be entitled to equitable tolling, Miller must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.*; *see also Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). A court should be "much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights." *Vroman,* 346 F.3d at 605, *quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *accord Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Garrison v. Warren Corr. Inst.*, 1999 U.S. App. LEXIS 13314 (6th Cir. Jun. 10, 1999).

Miller's conclusion that he has been diligently pursuing his rights as evidenced by his state court filings is insufficient to justify equitable tolling. (ECF No. 16 at 3.) The Court disagrees that Miller's prolific filings in state court demonstrate diligence. As discussed above, Miller's many

filings were found to be untimely under state rules. If anything, Miller's state court filings reflect a pattern of tardiness that contradict his claims of diligence. Furthermore, even assuming that Miller was diligent, he has failed to identify any extraordinary circumstances that stood in his way. In his surreply, Miller appears to argue that his counsel's ineffectiveness should equitably toll the statute of limitations. Such an argument is without merit. Miller's aforementioned late filings were all submitted while he was representing himself *pro se*, and his untimely habeas petition cannot be blamed on his appellate counsel who timely filed his direct appeal.[6] As such, Miller has failed to meet his burden of demonstrating that equitable tolling is appropriate.

**D. Actual Innocence**

In *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013), the United States Supreme Court recently held that actual innocence, if proved, may overcome the expiration of AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1). *Id*. at 1931.

> In addition to clarifying that there are no temporal limitations to presenting evidence in support of an actual-innocence claim, *McQuiggin* also reiterated the standard needed to make one out. *Id*. at 1931. The touchstone of the inquiry is whether a petitioner's "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [him].'" *Id*. at 1933 (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538, 126

---

[6] Miller references the subsequent suspension of his trial counsel, Dennis DiMartino, from the practice of law. (ECF No. 16 at 6.) Counsel was suspended for bigamy after he married another woman in July of 2007 prior to the finalization of his divorce in August of 2007. (ECF No. 7-2 at 55-59.) The Court fails to see how trial counsel's wholly unrelated misconduct justifies equitably tolling the statute of limitations.

> S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (internal quotation marks omitted). With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred." *Id*. (internal quotation marks omitted).

*Eberle v. Warden, Mansfield Corr. Inst.*, 532 Fed. Appx. 605, 612-613 (6th Cir. 2013)

The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" *McQuiggin*, 133 S.Ct. at 1928. In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 298.

In the instant case, Miller argues that he is actually innocent based on number of newspaper articles and the statement the victim made to the police. (ECF No. 16.) These statements and articles do not exonerate Miller in any way. As best this Court can glean from his filings, Miller believes there are some inconsistencies in the victim's statements or testimony and the news articles. This does not come close to satisfying the standard that the new evidence must be *reliable*, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or other critical physical evidence that was not presented at trial.

## III. Conclusion

For the foregoing reasons, it is recommended that this matter be DISMISSED as time barred.

/s/ *Greg White*
U.S. Magistrate Judge

Date: June 3, 2014

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**